IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 NOV -2 PM 2: 42

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| MARY E. McNALLY,<br><br>Plaintiff,<br><br>v.<br><br>METHODIST HEALTHCARE and METHODIST HEALTHCARE MEMPHIS HOSPITALS, and RANDALL "RANDY" SECREASE,<br><br>Defendants. | No. 03-2801 DV |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is the motion (dkt. # 16) of Defendants Methodist Healthcare and Methodist Healthcare Memphis Hospitals ("Defendants") for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Mary E. McNally ("Plaintiff") asserts claims for hostile work environment/sexual harassment and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and sex discrimination, in violation of the Tennessee Human Rights Act. For the following reasons, Defendant's motion for summary judgment as to Plaintiff's Title VII claims is **GRANTED** in part and **DENIED** in part.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff has been employed by Defendants since 1994 as a Level II CT Technologist. She

---

[1] Defendants have filed a separate motion concerning the Tennessee Human Rights Act claim.

[2] For purposes of this motion, the Court accepts these facts to be true. They are taken from the complaint, Defendants' motion for summary judgment, and Plaintiff's response to Defendant's motion.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _____



began working in the radiology department of Defendants' Methodist North Hospital in June of 2001. Defendant Randall Secrease ("Secrease") often works in the same area with Plaintiff.

Secrease received his first written corrective action on November 20, 1997 for inappropriate behavior, specifically, cursing. The corrective action form stated that Secrease would be terminated if there was a need for further corrective action.

In May of 1998, a female employee, Stacy Vickers ("Vickers"), reported to her manager, Sherry Kasaitis ("Kasaitis"), that Secrease bumped his chest against hers and called her a "cunt." Vickers also spoke with another manager, Gary Britt ("Britt"), who asked Vickers if she wanted Secrease fired. Vickers declined because she was new and did not want to start trouble.

Secrease received his second written corrective action on August 4, 2000, for licking the ear of a nurse, Charlotte Pankey, at the bedside of a patient. The managers decided not to terminate Secrease, nor did they counsel him concerning Methodist's sexual harassment policy.

Beginning in 2001, Secrease allegedly made sexually offensive comments and gestures to Plaintiff on numerous occasions. On October 14, 2001, when Plaintiff was working on call, she slept in the bed that was dedicated for on-call workers. The lights were off and the door was locked. She was allegedly awakened by Secrease lying on top of her, restraining her. He had his pants untied. Plaintiff orally reported the incident, as well as the comments and gestures, to her supervisor, Eddie Pirtle ("Pirtle"), who advised her that he would take care of the situation. Pirtle told Plaintiff a few days later that he had discussed the matter with Britt, who delegated the problem to Pirtle. Pirtle told McNally that he spoke with Secrease and she did not need to worry about him again. However, for several months following that incident, Secrease allegedly made sexual comments virtually every time he saw Plaintiff.

On January 17, 2002, Plaintiff reported to Beth DeBacker ("DeBacker"), a manager, that

Secrease's harassing behavior had continued. On January 18, 2002, at DeBacker's request, Plaintiff reported the incidents in writing. Plaintiff also identified two other women, Christina Faller ("Faller") and Shantisha Wherry ("Wherry"), whom she believed had been harassed by Secrease. DeBacker informed Plaintiff that Secrease had prior problems with sexual harassment and that he would be terminated. DeBacker obtained statements from Faller and Wherry. On January 22, 2002, Britt, DeBacker, and Kasaitis met with Secrease. Following that meeting, the three managers wanted to terminate Secrease. However, the managers met with the human resources department and it was decided that Secrease would be suspended for four days instead of being terminated. On January 27, 2002, Kasaitis informed Plaintiff that a decision had been made not to terminate Secrease. Plaintiff was also told that Secrease had previously been terminated for the same type of conduct but had been reinstated by someone "higher up." Following the suspension, Secrease was placed on the day shift so that he could be supervised closely. However, Plaintiff primarily worked the day shift, so Secrease's new assignment meant that he would be working with Plaintiff much more frequently.

On January 29, 2002, Secrease received his third written corrective action for inappropriate behavior and comments. As before, the corrective action stated that if there is a need for further corrective action, Secrease would be terminated.

Plaintiff met several times with her supervisors and human resource personnel. She informed them that she was afraid of working with Secrease. Plaintiff began to turn down the opportunity to work on call because it would mean additional time working with Secrease with fewer employees present. On February 16, 2002, Secrease resigned after numerous additional complaints were lodged against him. Plaintiff alleges that she suffered humiliation and severe emotional distress as a result of the harassment.

On March 1, 2002, Plaintiff filed a charge of discrimination with the Equal Employment

3

Opportunity Commission ("EEOC"), which issued a determination that Defendants violated Title VII. Plaintiff filed her complaint with this Court on October 28, 2003. Defendants filed the instant motion for summary judgment, pursuant to Fed. R. Civ. P. 56, on August 1, 2005.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. 1998).

Facts must be presented to the court for evaluation. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The court may consider any material that would be admissible or usable at trial. 10a Charles A. Wright et al., Federal Practice and Procedure § 2721, at 40 (2d ed. 1998). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex, 477 U.S. at 324; Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir.

4

1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

## III. ANALYSIS

### A. Hostile Work Environment

Defendants argue that Plaintiff's claim of sexual harassment should be dismissed, since, as a matter of law, the conduct of which Plaintiff complained was insufficient to create a hostile work environment. To prevail on her hostile work environment claim, Plaintiff must show that

> (1) she is a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) [Defendant] "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action."

Blankenship v. Parke Care Centers, Inc., 123 F.3d 868, 872 (6th Cir. 1997), (quoting Fleenor v. Hewitt

5

Soap Co., 81 F.3d 48, 50 (6th Cir. 1996). Defendants assert that Plaintiff's allegations, even if true, fail to establish the fourth or fifth elements of this test.

Workplace conduct with sexual overtones is not always actionable as harassment under Title VII. Meritor Savs. Bank v. Vinson, 477 U.S. 57, 67 (1986). To be actionable, the harassment must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." Id. (citation and internal quotations omitted). This is to be judged by both a subjective and objective standard. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993). The conduct must be objectively severe or pervasive enough such that a reasonable person would find the environment hostile and the victim must subjectively regard the work environment as hostile. Id

Whether a workplace environment is objectively hostile or abusive should be determined under the totality of the circumstances. Id. at 23. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. Simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. Faragher v. City of Boca Raton, 528 U.S. 775, 788 (1998). Isolated incidents alone must be extremely serious to amount to discriminatory changes in the terms or conditions of employment. Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000) (holding that offensive sexual advance was not sufficiently serious to create a hostile environment); Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."). Whether Defendants' alleged action is objectively hostile or abusive enough to be actionable under Title VII is to be judged from the viewpoint of a reasonable woman standing in

6

Plaintiff's shoes. See Yates v. Avco Corp., 819 F.2d 630, 637 (6th Cir. 1987).

Plaintiff has come forward with sufficient evidence to raise a triable issue with respect to the existence of a hostile work environment. In considering the Harris factors delineated above, Secrease's conduct was both severe and pervasive. See e.g. Williams v. General Motors Corp., 187 F.3d 553, 563 (6th Cir. 1999) (allegations of sexual remarks, foul language, and pranks raise a question of fact for the jury); Greenwood v. Delphi Automotive Systems, Inc., 257 F.Supp.2d 1047, 1032 (S.D.Ohio 2003) (finding that numerous sexual remarks and an unwelcome massage over a two-month period were sufficiently severe and pervasive). Plaintiff has alleged that Secrease assaulted her by lying on top of her when she was sleeping and holding her against her will. Moreover, Plaintiff has alleged that Secrease repeatedly made sexually-offensive and vulgar comments and gestures to her. Furthermore, Plaintiff has alleged that Secrease harassed and terrorized many women on numerous occasions. "[E]pisodes of harassment concerning other women are probative to plaintiff's experience in a hostile work environment, even if not directed at plaintiff herself." Wanchik v. Great Lakes Health Plan, Inc., 6 Fed.Appx. 252, 262 (6th Cir. 2001). Plaintiff's allegations are thus sufficient to create a genuine issue of material fact as to whether there was a hostile work environment. See Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 252 (6th Cir. 1998) (finding that conduct was sufficient to survive summary judgment on a hostile work environment claim where the conduct was alleged to be continuous and commonplace). See also, Hickman v. Laskodi, 45 Fed.Appx. 451, 455 (finding that a single incident in which a supervisor physically threatened an employee because of her sex was sufficiently severe to objectively constitute harassment).

Even after a hostile work environment has been established, in order for the Court to find an employer liable for the sexual harassment of an employee by a coworker, the fifth element of the

analysis requires that the harassed employee show that the employer knew or should have known of the harassment and failed to take prompt and appropriate corrective action. McCombs v. Meijer, Inc., 395 F.3d 346, 354 (6th Cir. 2005). Defendants assert that Plaintiff has not satisfied the fifth element of the analysis because when Plaintiff told her supervisors of the harassment, knowledge could not be imputed to Defendants. Only when Plaintiff directly reported the harassment to management could Defendants be expected to respond.

Plaintiff contends that Defendant was aware of Secrease's aberrant behavior before he ever directed it toward Plaintiff. Furthermore, Plaintiff maintains that informing her supervisors was sufficient for the Court to impute knowledge to Defendants. Prior to Plaintiff's complaints of sexual harassment by Secrease, Defendants were allegedly aware of numerous incidents of harassment by Secrease against many different women. Plaintiff repeatedly reported the harassment to the lead CT technologists, whom she considered her supervisors. Not only did she believe that she was following proper protocol, but she was told that the problem would be resolved. Moreover, Plaintiff alleges that at least one lead CT technologist told her that he had discussed the harassment with Britt, who was a member of management. Finally, Britt admitted that he would expect that the lead CT technologists would advise management of harassment if they learned of it. Thus, Defendants either knew or should have known of Secrease's behavior.

Defendants further assert that Plaintiff has failed to meet the fifth prong of the analysis because when Defendants learned about the harassment, they took appropriate action. When allegations of sexual harassment involve a coworker and the employer has fashioned a response, "the employer will only be liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.'" McCombs, 395 F.3d at 355, quoting Blankenship, 123 F.3d

8

at 873. Therefore, an employer who implements a remedy can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination. Id.

In the instant case, Plaintiff has alleged that Defendant was aware of Secrease's repeated harassments and assaults on the women with whom he worked. Britt allegedly admitted to Plaintiff that he had nearly terminated Secrease on three occasions and should have done so, but refrained because he felt sorry for Secrease because of personal problems Secrease was having. Prior to Plaintiff's complaints, Secrease had been warned and written up because of repeated incidents of sexual harassment of women. When one of the lead CT technologists discussed the incident of Secrease physically assaulting Plaintiff with Britt, Britt allowed the lead technologist to resolve it. The lead technologist talked to Secrease to no avail.

When Plaintiff complained to management, an investigation was conducted and managers confronted Secrease. Although the management team wanted to terminate Secrease, the human resources department chose to suspend him. Secrease received another written corrective action. Each of the written corrective actions stated that if there was the need for further action, Secrease would be terminated. Each time, however, Secrease was given another chance.

Plaintiff has sufficiently established that Secrease followed a clear pattern of harassment and assault of women about which Defendant knew or should have known. Although Defendant warned Secrease and gave him written corrective actions, the behavior did not stop and women continued to be terrorized and harassed. Thus, a genuine issue of material fact has been raised as to whether Defendants negligently failed to take reasonable measures to put a stop to the harassment or exhibited such indifference as to indicate an attitude of permissiveness that amounts to discrimination.

9

Accordingly, Defendants' motion for summary judgment on Plaintiff's sexual harassment claim is denied.

### B. Retaliation

Defendant next contends that Plaintiff has not established a *prima facie* case of retaliation. Plaintiff agrees that summary judgment is appropriate with respect to her claim of retaliation. Accordingly, Defendants' motion for summary judgment as to Plaintiff's retaliation claim is granted.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's retaliation claim and **DENIES** Defendants' motion for summary judgment as to Plaintiff's hostile work environment claim.

**IT IS SO ORDERED** this 2nd day of November, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 29 in case 2:03-CV-02801 was distributed by fax, mail, or direct printing on November 3, 2005 to the parties listed.

---

Donald A. Donati
DONATI LAW FIRM, LLP
1545 Union Ave.
Memphis, TN 38104

W. Polk Tillman
LAW OFFICE OF W. POLK TILLMAN
5090 Mill Branch Rd.
Ste. 2
Memphis, TN 38130--036

William B. Ryan
DONATI LAW FIRM, LLP
1545 Union Ave.
Memphis, TN 38104

David P. Jaqua
BUTLER SNOW O'MARA STEVENS & CANADA, PLLC
6075 Poplar Ave.
Ste. 500
Memphis, TN 38119

Honorable Bernice Donald
US DISTRICT COURT